# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| Richard LaFleur | Civil Action No. 6:04-CV-1263 |
| versus | Judge Tucker L. Melançon |
| Louisiana Health Service & Indemnity. Co. | Magistrate Judge Mildred E. Methvin |

## MEMORANDUM RULING

Before the Court are cross motions for summary judgment filed by defendant Louisiana Health Service & Indemnity Company *d/b/a* Blue Cross Blue Shield of Louisiana ("Blue Cross") [Rec. Doc. 23] and by plaintiff Richard LaFleur [Rec. Doc. 26]. For the following reasons, defendant's motion will be granted and plaintiff's motion will be denied.

### *I. Background.*

Dr. Richard LaFleur filed this claim for health insurance benefits under the employee health benefit plan of The Family Clinic, Inc. ("the Plan"), a plan provided to employees of The Family Clinic, Inc. The Plan is an employee welfare benefit plan within the meaning of Section 3(1), 29 U.S.C. § 1002(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

LaFleur underwent a cardiovascular bypass operation on May 7, 2001. After surgery, he suffered an anoxic event and on August 20, 2001 was transferred to the Eunice Manor Nursing Home ("Eunice Manor") for continuous tracheotomy care, decubitus care and peg tube care/feedings. Pursuant to the Policy's "Individual Case Management" procedures, in a special agreement with Eunice Manor dated August 9, 2001, Blue Cross agreed to provide "Alternative Benefit"[1] care for LaFleur at a rate of $516.00 per day. Blue Cross reviewed LaFleur's case and condition regularly and continued reimbursement until May 16, 2003 after it advised Eunice Manor that it had determined that the services rendered to LaFleur constituted "Custodial Care." Based on the Plan's exclusion for "Custodial Care", Blue Cross discontinued LaFleur's benefits. The determination that the services rendered to LaFleur constituted "Custodial Care" was made by William Weldon, M.D. and included consultation with Dr. Dwight Brower and a Board Certified Unrologist. Thereafter, LaFleur appealed Blue Cross's determination on two levels pursuant to the terms of the Plan.

On June 10, 2004, LaFleur filed this action against Blue Cross seeking damages pursuant to the Employee Retirement Income Security Act (ERISA), 29

---

[1] "Alternative Benefits" is defined under the Plan as, "Benefits for services not routinely covered under the Benefit Plan but which may be provided by agreement through Case Management." *Plan, p.10.*

U.S.C. § 1001, *et seq.*, alleging that Blue Cross made a factually and legally incorrect determination regarding the payment of benefits and that Blue Cross's denial of benefits was arbitrary and capricious.[2] Blue Cross argues on summary judgment that it did not abuse its discretion in denying LaFleur benefits. LaFleur maintains that the Court should review Blue Cross's determination to deny benefits under an abuse of discretion standard with a sliding scale to account for Blue Cross's inherent conflict of interest.

## *II. Summary Judgment Standard.*

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-

---

[2] The parties do not dispute that ERISA governs the Plan in this case and that the Plan gives Blue Cross the discretion to determine eligibility for benefits and construe its terms.

moving party's claim. *Celotex Corp.,* 477 U.S. at 324.

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Little*, 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. Law and Analysis

A denial of ERISA benefits by a claims administrator is reviewed by the Court under a de novo standard unless the plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1305 (5th Cir.1994) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989)). It is undisputed that the terms of the policy give the administrator the discretionary authority to determine eligibility for benefits and to interpret the Plan in making benefit determinations, therefore, this

Court is limited to the abuse of discretion standard of review.

This abuse of discretion standard is modified when there exists an inherent potential conflict of interest, as in this case, when the insurer is also the plan administrator. The Court should apply a "sliding scale" abuse of discretion standard: the greater the evidence of conflict on the part of the administrator, the less deferential the Court's abuse of discretion standard should be. *Vega*, 188 F.3d at 297-99. In such instances, the Court should consider the potential conflict as a "factor to be considered in determining whether the administrator abused its discretion in denying the claim." *Id.* The Court's recognition of such a potential conflict does not raise the level of scrutiny, but "need only assure that the administrator's decision falls somewhere on a continuum of reasonableness, even if on the low end." *Id.*

The Fifth Circuit applies a two-prong test when reviewing an administrator's denial of benefits. First, the court must determine the "legally correct interpretation of the [policy]." *Lain v. Unum Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir.2002) (quoting *Tolson v. Avondale Industr., Inc.*, 141 F.3d 604, 608 (5th Cir.1998)). If it is found that the administrator's interpretation of the plan was legally correct, the inquiry is over, pretermitting any need to consider whether a legally incorrect interpretation of the fiduciary was not an abuse of discretion. *Ellis v. Liberty Life Assur. Co. of Boston,* 394 F.3d 262, 270 (5th Cir. 2004). In ascertaining the legally

correct interpretation of the policy, the Court must consider (1) whether a uniform construction of the policy has been given by the administrator, (2) whether the interpretation is fair and reasonable, and (3) whether unanticipated costs will result from a different interpretation of the policy. *Gosselink v. American Tel. & Tel., Inc.* 272 F.3d 722, 726 (5th Cir. 2001).

LaFleur contends that the Administrator did not give uniform construction to the Plan and abused its discretion in denying benefits in that the care and treatment of LaFleur was the same from August 20, 2001 to May 16, 2003 and that "this care had been paid without question by [Blue Cross] either as a covered expense or an alternative benefit." *R. 31, p.19.* LaFleur asserts that nothing changed as to LaFleur's condition, and therefore, Blue Cross changed the policy interpretation. Because Blue Cross did not recognize the provision in the policy which excludes "nursing home or custodial home care regardless of the level of care required or provided" to initially deny LaFleur benefits, the later decision to deny benefits was "not fair." *Id. at p.20.* In essence, LaFleur contends that because the Plan administrator chose not to deny benefits to him in August 2001, Blue Cross did not interpret the Plan uniformly and abused its discretion when it terminated his benefits in May 2003.

The Fifth Circuit considered a similar situation in *Ellis v. Liberty Life Assur.*

*Co. of Boston,* 394 F.3d 262 (5th Cir., 2004). In *Ellis*, the plan administrator made an initial determination of eligibility for long term disability benefits in favor of Ellis. Six months later, however, the administrator informed Ellis that, based on the medical information, she no longer met the policy's definition of disability. Ellis argued that because the administrator initially determined that she qualified for benefits, it abused its discretion when it terminated her benefits months later without medical evidence reflecting that a substantial change in her condition had occurred in the interim.

In holding that the plan administrator did not abuse its discretion in denying benefits the court stated, " We have found no statutory, regulatory, or jurisprudential authority that would heighten the level of the proof needed for a plan fiduciary to determine entitlement or non-entitlement to [] benefits simply because the fiduciary previously had approved entitlement and paid benefits to the employee in question.... All that ERISA requires is that substantial evidence support a plan fiduciary's benefits decision-whether it be to deny benefits initially or to terminate benefits previously granted-when, as here, the plan fiduciary is vested with the discretion to determine, inter alia, both initial and continued eligibility for benefits." *Id.* at 273-274.

The court went on to hold, "[W]hen a plan fiduciary initially determines that a covered employee is eligible for benefits and later determines that the employee is not, *or has ceased to be,* eligible for those benefits by virtue of additional medical

information received, the plan fiduciary is not required to obtain proof that a substantial change in the [] recipient's medical condition occurred *after* the initial determination of eligibility. Indeed, evidence could exist [] at the time that the plan fiduciary initially granted benefits that demonstrates that the ERISA plaintiff is not [entitled to benefits]. In addition, a plan fiduciary could receive evidence that an ERISA plaintiff is not [entitled to benefits] after it has made the initial grant of benefits. A contrary holding would basically prohibit a plan fiduciary from ever terminating benefits if it later discovered evidence that the ERISA plaintiff was not [entitled to benefits] at the time of the initial grant of benefits.... More importantly to plan participants and beneficiaries, such a rule would have a chilling effect on the promptness of granting initial benefits in the first place. This we are unwilling to do. A plan fiduciary that has granted plan benefits to a participant or beneficiary is not estopped from terminating those benefits merely because there is no evidence that a substantial change in the covered employee's medical condition occurred after the original grant of benefits." *Ellis* at 272 (emphasis in text).

Here, the record provides that Blue Cross initially agreed to pay alternative benefits that were ordinarily not covered by the Plan, pursuant to a case management special agreement. The fact that Blue Cross granted Plan benefits for this ordinarily uncovered case does not evidence abuse of discretion or improper motive. *See Ellis,*

8

394 F.3d 262. Blue Cross's denial of benefits was rationally based on the medical information contained in LaFleur's claims file. LaFleur contends that Blue Cross did not consider the report of LaFleur's treating physician, Dr. Tate, the record provides otherwise in that it contains reports from Dr. Tate. *Record, pp. 00263& 00267.* ERISA, however, does not mandate that plan administrators must accord special deference to the opinions of treating physicians. *Wade v. Hewlett-Packard Development Co. LP Short Term Disability Plan*, 493 F.3d 533, 541 (5th Cir.,2007). In its denial, Blue Cross stated that Blue Cross' Case Management Department continually monitored LaFleur's condition in order to determine that the care he received was eligible for reimbursement under the Case Management Agreement. *Record, 000277.* On May 16, 2003 Blue Cross determined that, based on a Medical Director Review by William Weldon, M.D. in consultation with a Board Certified Urologist, *Id., 000144,* LaFleur's care was custodial in nature and he was no longer eligible under the Plan's "Exclusion for Custodial Care." *Plan, p.55.* "Custodial Care" is defined as:

> Treatment or services, regardless of who recommends them or where they are provided, that could be rendered safely and reasonably by a person not medically skilled, or that are designed mainly to help the patient with daily living activities. These activities include, but are not limited to: ... long-term treatment for a condition in a patient who is not expected to improve or recover.

*Plan, p. 13.*

There is ample support in the administrative record for Blue Cross's decision to terminate LaFleur's benefits. The Court finds that Blue Cross gave the "legally correct interpretation" of the Plan as it gave a uniform construction of the policy, the interpretation was fair and reasonable and the only unanticipated costs would have inured to the benefit of Blue Cross. Moreover, as the Fifth Circuit held in *Ellis*, Blue Cross should not be punished for initially allowing special coverage in the event of possible improvement in LaFleur's condition. Blue Cross provided Plan coverage for 2 years until it eventually concluded that LaFleur's condition would not improve or recover. Thus, Blue Cross did not abuse its discretion, even under a "sliding scale" standard, in reaching its decision to deny benefits.

### *IV. Conclusion.*

For the foregoing reasons, the Court finds that, based on the information contained in the administrative record, Blue Cross did not misinterpret the Plan nor abuse its discretion in denying LaFleur benefits. Accordingly, Defendant's motion will be granted and Plaintiff's motion will be denied.